**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| JOHN DOE, | Civil Action No.: 22-cv-553 |
| Plaintiff, | |
| vs. | COMPLAINT FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT |
| SARMA COLLECTIONS, INC., | |
| Defendant. | DEMAND FOR JURY TRIAL |

Plaintiff, John Doe ("Plaintiff"), by and through the undersigned counsel, hereby brings this action against defendant Sarma Collections Inc. ("Sarma" or "Defendant"), and alleges based upon Plaintiff's personal knowledge, the investigation of counsel, and information and belief, as follows:

**NATURE OF THE ACTION**

1.  This is an action to recover damages and other relief for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§1681, *et seq*. Plaintiff was denied employment and humiliated because Defendant sold consumer reports (alternatively referred to as "background reports") indicating multiple criminal records from ten years ago that have been expunged in May of 2016. As a result, Plaintiff's job application was denied, and he has lost wages and suffered emotional harm and distress, and continues to suffer the effects of those harms.

2.  Serma's reporting of expunged records in this case was not a fluke. Rather, it was caused by Defendant's failure to devise, implement, and follow reasonable

1

procedures to ensure the maximum possible accuracy of the information contained on Defendant's consumer reports concerning Plaintiff.

3. Defendant did so in order to maximize the number of reports which contain information, accurate or not. Defendant intentionally and purposefully prioritizes the quantity of, and speed in producing, consumer reports over accuracy.

4. Defendant's reporting of inaccurate information is not accidental, nor a result of simple negligence, but a result of deliberately designed policies and procedures.

## JURISDICTION AND VENUE

5. Jurisdiction of this Court arises under 28 U.S.C. § 1331 and 15 U.S.C. § 1681 *et seq*.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides in, and maintains its principle place of business in, this judicial district.

7. Defendant resides in this judicial district, such that personal jurisdiction is established.

## PARTIES

8. Plaintiff is a natural person who resides in Spartanburg, South Carolina. Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

9. Defendant Sarma is regularly engaged in the business of compiling consumer information to include in background checks and generate employment-purposed consumer reports that it sells to third parties for a profit. Therefore, Sarma is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

10. Sarma is a for-profit corporation incorporated in Texas. Sarma maintains a principal place of business at 555 E Ramsey Rd, San Antonio, TX 78216-4640, and may be

2

served through its registered agent, c/o Roberto Benavides, 555 E Ramsey Rd, San

Antonio, TX 78216-4640.

11. At all times relevant to this Complaint, Defendant acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## FACTUAL ALLEGATIONS

### A. The FCRA

12. The FCRA is a federal statute designed to protect consumers from the harmful effects of inaccurate information reported in consumer credit and background reports. Thus, Congress enshrined the principles of "fair and accurate credit reporting" and the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness" in the very first provision of the FCRA. See 15 U.S.C. § 1681a.

13. To that end, the FCRA imposes the following twin duties on consumer reporting agencies (commonly referred to as "credit bureaus" of "background check companies"): (i) consumer reporting agencies must devise and implement reasonable procedures to ensure the "maximum possible accuracy" of information contained in consumer reports; and (ii) consumer reporting agencies must reinvestigate the facts and circumstances surrounding a consumer's dispute and timely correct any inaccuracies or suppress the inaccurate or misleading information.

14. The FCRA provides consumers with a private right of action against consumer reporting agencies that fail to comply with their statutory obligations.

**B.  Defendant's Reporting Harmed Plaintiff**

15. Plaintiff, a single father, resides in Spartanburg, South Carolina, with his minor daughter.

16. Plaintiff had previously been employed as a sales, inventory, and service manager for a wholesale supplier of industrial materials.

17. In or around April of 2022, Plaintiff and his previous employer agreed to part ways, and Plaintiff immediately embarked on a search to find and secure new employment.

18. On or about April 29, 2022, Plaintiff submitted an employment application to City Electric Supply ("CES"), an electrical wholesaler for residential, commercial, and industrial needs with over 500 locations across the United States

19. Plaintiff was interviewed for the CES position, and he was informed that he would most likely be hired pending his successful completion of a drug test and routine background check. Plaintiff's job start-date was to be on May 16, 2022.

20. Plaintiff passed the drug test without issue.

21. Plaintiff was excited at the CES opportunity, which job would involve responsibilities and tasks nearly identical to those of his previous employment and with which he was already familiar. Therefore, the CES position was ideal that would not require much transitionary efforts on the part of Plaintiff.

22. In addition, the CES position offered commission-based bonuses in addition to hourly wages. Plaintiff believed that the bonuses alone would likely generate income that will match or exceed the amount he would earn from hourly wages.

23. The CES position would further provide a truck that did not bear CES' logos or insignia, such that the employee – such as Plaintiff – may use the truck also for his own purposes.

24. Much to Plaitniff's surprise, Plaintiff soon received a letter from CES, dated May 10, 2022, addressed to Plaintiff (the "Denial Letter").

25. The Denial Letter, purportedly written by Rachael Ojeda, a CES "HR Generalist," informed Plaintiff of the following:

We are writing to inform you that information in the enclosed consumer report, including information concerning your criminal record, has caused us to consider making an adverse decision relating to your application. . . .

The report states LARCENY / GRAND LARCENY, VALUE MORE THAN $2,000 BUT LESS THAN $10,000. The job duties relevant to your criminal record information include the job duties relevant to your criminal record information include abiding by the company policies and procedures.

We have considered the nature of the job, the nature and gravity of the criminal offense, whether the record reflects a conviction or only an arrest, the time that has passed since the offense and/or completion of the sentence, and other factors.  Upon consideration of these factors, the Company has determined that your criminal record poses an unacceptable level of risk.

26. The Denial Letter further informed Plaintiff that he had five business days within which to "present evidence" or "explain to the Company's satisfaction" why the criminal record should not be a basis upon which CES denies Plaintiff's employment application.

27. The Denial Letter further provided that "[t]he report was furnished to us by SARMA, 555 E Ramsey San Antonio, TX 78216, Phone: 800-955-5238, Fax: 800-226-7785."

28. Upon reading the Denial Letter, Plaintiff was dumbfounded, and was beside himself with frustration, anxiety, and grief.

29. Plaintiff did not receive a consumer report from CES, Sarma, or anyone else, and has still, even today, never been provided a copy of the consumer report produced by Sarma and eventually used by CES in its adverse employment determination.

30. The Denial Letter's statement that Plaintiff had been associated with the crime of GRAND LARCANY raised echoes of familiarity for Plaintiff.

31. In another time, ten years ago, Plaintiff had been convicted of certain criminal charges, including Grand Larceny. Specifically, in May of 2012, Plaintiff pleaded

6

guilty to certain drug-related charges, which pertain to indictment numbers 12GS421944, 12GS421945, and 12GS421946, and warrant numbers N155031, Ni55032, and N155165 (collectively, the "Criminal Records") and was diverted to a Drug Court program, which he successfully completed on October 1, 2013.

32. From October 2013, when Plaintiff has completed the Drug Court program, and, in or around May of 2016, Plaintiff commenced a process to have the Criminal Records expunged.

33. Accordingly, the plea relating to the Criminal Records had been withdrawn, and the charges dismissed with prejudice, as reflected in an order of the Spartanburg County Drug Court dated May 17, 2016 (the "Expungement Order").

34. Subsequent to the Expungement Order, Plaintiff collaborated with various third party entities, such as non-profits, to ensure that his Criminal Records had been expunged from other public-facing databases, as well.

35. As of May of 2022, a clerk of the Spartanburg County Drug Court confirmed that the Criminal Records were not in existence because they had been expunged.

36. Furthermore, even if the Criminal Records had not been expunged, Defendant would still be barred from including the Criminal Records that had occurred more than seven years previously because the Expungement Order had also withdrawn Plaintiff's guilty plea, thus rendering the Criminal Records mere "records of arrest" subject to the prohibition contained in 15 U.S.C. § 1681c(a)(1).

37. Upon information and belief, the Denial Letter was based on a consumer report provided by Sarma concerning Plaintiff (the "Sarma Report").

38. Upon information and belief, the Sarma Report included various criminal records as associated with Plaintiff, such as Grand Larceny.

39. Upon information and belief, the Sarma Report included various Criminal Records in addition to the Grand Larceny.

40. Upon information and belief, and as described by a representative of CES, the Sarma Report indicated that the Grand Larceny had occurred in the year 2016, and not in 2012.

41. Upon receiving the Denial Letter, Plaintiff contacted a CES representative and explained that records relating to Grans Larceny had been expunged, and, anyways, was inaccurate because it had occurred in 2012, not in 2016.

42. To Plaintiff's dismay, CES's representative refused to reconsider.

43. Upon information and belief, the Sarma Report included minor vehicular and/or traffic violations in addition to the Grand Larceny record.

44. Plaintiff has previously informed a representative for CES that a background check would likely uncover certain traffic violations. However, a CES representative informed Plaintiff that traffic violations were not of a kind that would hinder an applicant's employability at CES.

45. However, upon information and belief, after Plaintiff informed the CES representative that it may be a violation for CES to consider his expunged records, CES representative's stance suddenly shifted and CES began complaining that his traffic violations were the cause of CES's unwillingness to hire Plaintiff.

46. As a result of Sarma's inaccurate reporting, Plaintiff was forced to lose one week of work and the wages and benefits attendant thereto.

47. Plaintiff was distraught and unnerved. He had been counting on beginning his employment on the stated start date of May 16, 2022, and now Sarma has disrupted that and humiliated him.

48. Furthermore, the week of lost wages has caused Plaintiff to be unable to afford to pay rent on his apartment, and Plaintiff has been forced to postpone or forego other necessary expenditures so that he can purchase food and other more basic necessities for himself and for his daughter.

49. As a result of Sarma's actions, Plaintiff struggles to pay his bills.

50. Plaintiff has since secured another job elsewhere, which job began on or about May 24, 2022. However, not before Sarma has forced Plaintiff to endure a week of severe distress and turmoil.

51. Furthermore, even had Plaintiff submitted a dispute to Sarma, it would be fruitless. As explained *supra*, the purpose of expungement has already been defeated in Sarma's reporting of various expunged Criminal Records, because CES would not hire Plaintiff even if Sarma corrected its reporting.

52. As explained *supra*, once confronted, CES has shifted its stance and begun, pretextually, to claim that traffic violations were the cause that prevented Plaintiff from being hired by CES. Accordingly, a dispute by Plaintiff to Sarma to correct its inaccurate reporting would prove useless with respect to CES's denial of Plaintiff's applied-for employment.

**C. Plaintiff Suffered Additional Damages**

53. Despite knowing that its procedures often result in inaccurate reporting, Sarma recklessly and knowingly fails to employ procedure to assure only maximally accurate consumer information is compiled and published in the consumer reports it sells to third parties for a profit.

54. As a direct result of Sarma's failure to rectify the inaccuracy, Plaintiff suffered as described hereinabove.

55. Aside from the financial losses, Plaintiff suffered emotionally.

56. Plaintiff was unnerved, distraught, and distressed by the ordeal he was put through by Sarma.

57. Even aside from the gross misreporting relating to the Criminal Records, Plaintiff worked hard to put the expunged Criminal Records behind him. He paid his debt to society and persuaded the Spartanburg County Drug Court that the expunged convictions were worthy of expungement.

58. The Spartanburg County Drug Court agreed with Plaintiff, but that was, apparently, not enough. Sarma did not agree, and Plaintiff was forced to suffer the unfortunate but preventable result.

59. Until May 10, 2022, Plaintiff was living with the security of knowing that a court order had buried his past mistake that is the expunged Criminal Records. Since May 10, 2022, after Sarma had unearthed the expunged convictions, Plaintiff is haunted constantly by the prospect that his past was never really buried and may resurface at any time – and probably in the precise moment when Plaintiff needs it most to be gone.

60. Further, Sarma's actions have caused Plaintiff to feel guilt and shame. Plaintiff blames himself and his past for the aggravation and distress caused to his dependent minor child.

61. Sarma's actions have caused Plaintiff severe emotional distress, anxiety, and sleepless nights.

62. Plaintiff had already been prescribed antidepressant medication due to pre-existing anxiety. As a direct result of Sarma's actions and resultant heightened anxiety, on or about May 13, 2022, Plaintiff's treating physician prescribed a higher dosage of antidepressant medication.

63. During the week in between Plaintiff's being informed that he would be deprived of the CES job and his having secured a new job, Plaintiff was deeply concerned that he would not find another job for some time and that he would be unable to afford basic living necessities.

64. Furthermore, During the week in between Plaintiff's being informed that he would be deprived of the CES job and his having secured a new job, Plaintiff spent many hours searching for jobs.

65. Sarma's conduct, actions, and inaction caused Plaintiff to suffer actual damages, including, but not limited to, emotional distress which includes, mental anguish, embarrassment, stress, and anxiety.

### CAUSES OF ACTION
### COUNT I
### Defendant Violated 15 U.S.C. § 1681e(b)

66. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

67. In the parlance of the FCRA, background reports are "consumer reports."

68. Under 15 U.S.C. § 1681e(b), "whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."

69. Defendant violated 15 U.S.C. § 1681e(b) by failing to *establish* reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report(s).

70. Defendant violated 15 U.S.C. § 1681e(b) by failing to *follow* reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiff's consumer report(s).

71. Defendant's failure to employ and/or follow reasonable procedures while preparing Plaintiff's consumer report(s) caused Plaintiff to suffer actual damages, including statutory and actual damages, as described herein.

72. Defendant's violations of the FCRA were willful. Therefore, Defendant is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681n.

73. Alternatively, Defendant's violations of the FCRA were negligent. Therefore, Defendant is individually liable to Plaintiff for statutory and actual damages. *See* 15 U.S.C. § 1681o.

74. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs. *See* 15 U.S.C. §§ 1681n, 1681o.

## COUNT II

## Defendant Violated 15 U.S.C. § 1681k(a)(2)

75. Plaintiff incorporates by reference all the above paragraphs of this Complaint as though fully stated herein.

76. Under 15 U.S.C. § 1681k(a)(2) a consumer reporting agency must "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date."

77. Defendant failed to ensure that the public record information associated with Plaintiff was complete and up to date.

78. Defendant had actual notice that the information they provided was likely to have an adverse effect on Plaintiff's ability to obtain employment, as CES was attempting to purchase this information from Defendant to evaluate Plaintiff for continued or future employment.

79. Defendant's failure to maintain complete and up to date records while preparing Plaintiff's consumer report(s) caused Plaintiff to suffer damages, including statutory and actual damages, as described herein.

80. Defendant's violations of the FCRA were willful. Therefore, Defendant is individually liable to Plaintiff for actual, statutory, and punitive damages in an amount to be determined at trial. *See* 15 U.S.C. § 1681n.

81. Alternatively, Defendant's violations of the FCRA were negligent. Therefore, Defendant is individually liable to Plaintiff for statutory and actual damages. *See* 15 U.S.C. § 1681o.

82. In any event, Defendant is liable for Plaintiff's reasonable attorney's fees and costs.

*See* 15 U.S.C. §§ 1681n, 1681o.

## TRIAL BY JURY

83. Plaintiff is entitled to and hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment be entered against Defendant for the following:

a)      Actual damages pursuant to 15 U.S.C. §§ 1681n-o;

b)      Statutory damages pursuant to 15 U.S.C. §§ 1681n-o;

c)      Punitive damages pursuant to 15 U.S.C. § 1681n;

d)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. §§ 1681n-o;

e)      Any pre-judgment and post-judgment interest as may be allowed under the law; and

f)      Other and further relief as the Court may deem just and proper.

g)

DATED:  May 27, 2022                         **ATTORNEYS**

*/s/David A. Chami*
David A. Chami, 027585
The Consumer Justice Law Firm
8245 N. 85th Way
Scottsdale, AZ 85258
T: (480) 626-2359
F: (718) 715-1750
E: dchami@cjl.law